IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THOMAS T. GALLION, III, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL CASE NO. 2:20-cv-535-ECM |
| ) | (WO) |
| ZOE'S RESTAURANTS, LLC, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION and ORDER**

### I. INTRODUCTION

Now pending before the Court is Plaintiff Thomas T. Gallion, III's ("Gallion") motion to remand, (doc. 7), which Defendant Zoe's Restaurant ("Zoe's") opposes. (Docs. 17 and 19). The motion is fully briefed, under submission, and ready for resolution without oral argument.

Gallion initiated this suit on May 29, 2020 in the Circuit Court of Montgomery County, Alabama. (Doc. 1-1). He alleges that he was injured when he fell at Zoe's on March 12, 2020. He claims that when he entered Zoe's, his foot caught a rubber mat, and he fell head-first into a stucco entrance wall. He states that he was knocked unconscious and suffered numerous long-term injuries. His fall also has negatively impacted his hobbies, such as golf, and his legal career. Gallion contends that his injuries are the result of Zoe's negligence and/or wantonness, failure to remedy a hazardous condition, and failure to warn. He seeks compensatory and punitive damages.

Zoe's subsequently removed this case from state court on the basis of diversity jurisdiction. 28 U.S.C. §§ 1332 and 1441.  Gallion is a citizen of the State of Alabama, and Zoe's is owned by its sole member, Zoe's Kitchen, USA, which is incorporated in Delaware and has its principal place of business in Washington, D.C.  Although Gallion seeks compensatory and punitive damages, his complaint does not specify an amount of damages.  On July 16, 2020, in a detailed letter, Gallion demanded $450,000.00 to settle his claims against Zoe's. (Doc. 1-4).  In its notice of removal, Zoe's alleges that the Court has jurisdiction over this matter because the parties are citizens from different states and "[b]ased upon Plaintiff's explicit demand combined with the allegations in the Complaint, Plaintiff is clearly placing an amount in excess of $75,000.00 in controversy in this case." (Doc. 1 at 3, para. 9).  Upon consideration of the motion to remand, and for the following reasons, the Court concludes that the motion to remand is due to be DENIED.

## II.   STANDARD OF REVIEW

In examining the issue of jurisdiction upon which Zoe's premises removal, the Court is mindful of the fact that federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  "They possess only that power authorized by Constitution and statute," *Dudley v. Eli Lilley & Co.*, 778 F.3d 909, 911 (11th Cir. 2014), and courts should presume a case lies outside of its jurisdiction. *Kokkonen*, 511 U.S. at 377.

However, "[a]ny civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)),

*abrogated on other grounds by Cohen v. Office Depot, Inc*., 204 F.3d 1069 (11th Cir. 2000)). The removal statute requires the notice of removal to "[contain] a short and plain statement of the grounds for removal . . . ." 28 U.S.C. § 1446(a). The Supreme Court has interpreted the provision to have the same liberal pleading standard as that of a complaint in federal court. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) ("Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to 'simplify the "pleading" requirements for removal' and to clarify that courts should 'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading.'") (quoting H.R.Rep. No. 100–889, p. 71 (1988)). When the amount presented in the notice of removal is contested, the court must look to evidence. "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. However, "[t]he amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010) (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008)).

   The removing party bears a heavy burden of establishing the court's jurisdiction. *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). Indeed, the defendant's right to remove is "not on equal footing" with the plaintiff's right to choose his forum, as the plaintiff is still the master of the complaint. *Burns*, 31 F.3d at 1095. Any questions or doubts are to be resolved in favor of returning the matter to state court on a properly submitted motion to remand. *Id.*

3

## III.     FACTS AND PROCEDURAL HISTORY

Gallion alleges that on March 12, 2020, he sustained injuries when he fell at Zoe's while picking up a take-out order.  Specifically, he alleges that, just as he entered the building, his right foot caught a buckled rubber mat.  Gallion claims to have slammed head-first into a stucco entrance wall, knocking him unconscious and causing numerous permanent injuries.  He "cut his head, busted his left knee, suffered whiplash, tore a ligament in his right shoulder, suffered permanent back injury, and suffered loss of memory and permanent imbalance . . . ." (Doc. 1-2 at 3).  He further alleges he has been deprived of regular golfing, walking, yoga, and weight training activities.  He "has resigned from his local golf membership after 64 years," "feels his legal career may be over," and currently suffers from severe depression. (*Id.* at 4).  Further, "Plaintiff has been continually treated by an orthopedic physician, an emergency physician, his family physician, a Neurologist, and Physical Therapist . . . ." (*Id.* at 3).  Zoe's was served with Gallion's complaint on June 1, 2020. (*Id.* at 17–19).

On July 16, 2020, Gallion sent Zoe's a settlement demand letter, outlining the medical consequences of his injuries and demanding settlement in the amount of $450,000. (Doc. 1-4 at 3).  In quantifying the amount of the demand, Gallion represents that, due to his injuries, he will be forced to retire three years earlier than planned.  Thus, the amount reflects Gallion's earning capacity if he had the ability to work for an additional three years before retirement but does not include calculations based on Gallion's numerous visits to multiple doctors. (*Id.*).  Zoe's filed a notice of removal in this Court on July 28, 2020. (Doc. 1-2 at 20).

The parties agree that there is complete diversity between them: Gallion is a citizen of Alabama, and Zoe's is a citizen of Delaware and Washington, D.C. Zoe's relies on the allegations in the complaint and the demand letter as evidence that the amount in controversy is over $75,000, satisfying the jurisdictional requirements set out in 28 U.S.C. § 1332. (Doc. 1 at 2).

## IV. DISCUSSION

As an initial matter, the Court must determine what standard to apply to Zoe's notice of removal. Next, the Court investigates its jurisdiction over the subject matter of the suit.

### A. The removing party's burden of proof

A party may file the notice of removal at two points, either within thirty days after receipt of the initial complaint, or within thirty days of receipt of a "copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Here, both parties agree that removal was based on the receipt of "other paper." (Doc. 20 at 1–2). Zoe's removed the case on July 28, 2020, within thirty days of receipt of the "other paper" on July 16, 2020. However, the Parties disagree as to which standard should apply to Zoe's removal evidence.

As a result, the Parties have waded into the murky waters of *Pretka* and *Lowery v. Ala. Power Co.*, 483 F.3d 1184 (11th Cir. 2007). Gallion argues that Zoe's is bound by *Lowery*'s holding that a party filing a notice of removal under § 1446(b)(3) must "unambiguously establish" that the amount in controversy exceeds the jurisdictional amount by a preponderance of the evidence. (Doc. 18 at 1–2). However, Zoe's argues that,

5

because Gallion did not plead a specific amount in damages, it must only prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount, as set out in *Pretka*. (Doc. 13 at 1).  For the following reasons, the Court finds that *Lowery* supplies the appropriate standard in this case.

1. ***The Eleventh Circuit's removal jurisprudence outlines two standards depending on when a notice of removal is filed.***

In the Eleventh Circuit, federal courts consider when the notice of removal was filed and what documents it relies on when evaluating the amount in controversy required for diversity jurisdiction.

First, *Lowery* sets forth a standard for removing parties who file a notice of removal more than thirty days after receipt of the initial complaint and based on the receipt of "other paper." *See Pretka*, 608 F.3d at 757 (citing *Lowery*, 483 F.3d at 1188).  The Circuit explained, "where damages are unspecified and only the bare pleadings are available[,] we are at a loss as to how to apply the preponderance burden meaningfully." *Lowery*, 483 F.3d at 1212–11.  To avoid blind speculation, "the court considers the document received by the defendant from the plaintiff . . . and determines whether the document and the notice of removal unambiguously establish federal jurisdiction." *Id.* at 1213.  The Court therefore considers whether a notice of removal unambiguously establishes the amount in controversy by a preponderance of the evidence when the notice of removal is filed beyond thirty days from receipt of the initial complaint and based on the receipt of other paper.

Second, in *Pretka*, the Eleventh Circuit determined that the burden set out in *Lowery* did not apply to parties filing a notice of removal within thirty days of receipt of the

summons and the complaint. 608 F.3d at 758.  The Circuit taught, "[w]hen the complaint does not claim a specific amount of damages, removal from state court is [jurisdictionally] proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." *Id.* at 754 (quoting *Williams v. Best Buy Co., Inc.,* 269 F.3d 1316, 1319 (11th Cir. 2001)).  But if the amount in controversy is not facially apparent from the complaint, the removing party must carry its burden of establishing that the amount in controversy exceeds the jurisdictional requirement by a preponderance of the evidence. *Id.* at 768; *see also Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (applying the preponderance of the evidence standard when the removing defendant alleged that removability was apparent from the face of the complaint).  Under *Pretka*, the removing parties are not restricted to specific types of evidence to satisfy the jurisdictional requirements: "[d]efendants may introduce their own affidavits, declarations, or other documentation—provided of course that removal is procedurally proper." 608 F.3d at 755. Moreover, "when a district court can determine, relying on its judicial experience and common sense, that a claim satisfies the amount-in-controversy requirements, it need not give credence to a plaintiff's representation that the value of the claim is indeterminate." *Roe*, 613 F.3d at 1064.

Third, after the Eleventh Circuit's decisions in *Lowery*, *Pretka*, and *Roe*, the 2011 amendment to the removal procedure statute added the preponderance of the evidence standard to § 1446(c)(2)(B).  The statute provides,

> [i]f removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the

7

> amount in controversy, except that-- . . . removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

28 U.S.C. § 1446(c)(2)(B). At the time of this writing, the statute's amendment has not triggered any changes to *Lowery* and *Pretka*. But in light of the amendments to the statute and the preponderance of the evidence standard set out in *Dart* and *Pretka*, *Lowery*'s requirement seems to compel the Court "to continue forcing this square peg into a round hole." *Lowery*, 483 F.3d at 1211.

### 1. *Zoe's must satisfy the burden of proof required by* Lowery.

Zoe's removed this case within thirty days of receipt of the settlement demand letter, but not of the complaint. The Defendant was served on June 1, 2020, and the notice of removal was filed on July 28, 2020. Therefore, the Court finds that the removal was based on the receipt of "other paper"—in this case, the settlement demand letter—and that the timing of the notice of removal brings this suit firmly within *Lowery* territory. The Court concludes that Zoe's must unambiguously establish the jurisdictional amount in controversy by a preponderance of the evidence. *See id.* at 1213.

### B. The Court's jurisdiction

The notice of removal, (doc. 1), and the settlement demand letter, (doc. 1-4), unambiguously establish the requisite amount in controversy by a preponderance of the evidence.[1] There is little dispute that "[a] settlement offer can constitute an 'other paper'

---

[1] Even if the Court were to apply the standard set out in *Pretka* rather than in *Lowery*, the result would still be the same. The preponderance of the evidence certainly establishes that the amount in controversy is over $75,000. *See Roe*, 613 F.3d at 1061.

within the meaning of 28 U.S.C. § 1446(b)," *Lowery*, 483 F.3d at 1213 n.62, and the measure of damages set out in that letter unambiguously establishes by a preponderance of the evidence that the amount in controversy exceeds $75,000.[2]

Gallion's settlement demand letter weighs heavily in favor of a determination that the amount in controversy exceeds $75,000. "While [a] settlement offer, by itself, may not be determinative, it counts for something." *Burns*, 31 F.3d at 1097. The settlement demand letter from Gallion reads, in part,

> Mr. Gallion's average income for the last few years has been approximately $200-$250,000 per year. Prior to the dissolution of his former law firm in 2014, he generally made between $350-$400,00 per year. As we discussed, if we can settle this case now before incurring further expense, it would be beneficial for all involved. Mr. Gallion has therefore authorized me to settle his claims for $150,000 per year for three years for a total of $450,000.

(Doc. 1-4 at 3). The letter bases the $450,000 demand on the amount Gallion might have earned leading up to retirement, and it specifically outlines his past earnings, which he alleges will be affected by his short-term memory loss and difficulty writing with his right hand, which "has made him reluctant to represent new clients if they have litigation claims." (*Id.* at 2). Moreover, the letter painstakingly describes his injuries and his prognoses. *See Ingram v. Hobby Lobby Stores, Inc.*, 2019 WL 3346483, at *2 (M.D. Ala. July 25, 2019). The letter included a diary Gallion kept, which outlines his "feelings, frustration and pain." (Doc. 1-4 at 1). The letter also describes his continued "short-term

---

[2] In reviewing the evidence, Court does not view Zoe's supplement to its opposition to motion to remand, (doc. 19), as having probative value.

memory loss, loss of balance, and severe depression . . . ." (*Id.*). The letter explains that Gallion has completed physical therapy and planned to make an appointment with a chiropractor. (*Id.*). Gallion adds that his medical treatment is still ongoing. (Doc. 7 at 5).

Gallion unsuccessfully argues that the figures in the settlement demand letter are mere "puffing and posturing," relying on *Jackson v. Select Portfolio Servicing, Inc.*, 651 F.Supp.2d 1279, 1281 (S.D. Ala. 2009). (Doc. 18 at 4). In that case,

> [t]he letter in question simply [demanded] '[l]ump sum payment of $155,000,' without the slightest suggestion how in the world the plaintiffs could support such a figure. The only detail in the letter [was] contained in the succeeding two paragraphs, which [discussed] other, non-monetary relief the plaintiffs desired as well.

*Jackson*, 651 F.Supp.2d at 1281. There, the court recognized the demand as mere posturing because the plaintiffs gave little explanation for why they named a specific figure. *Id.* Indeed, when a settlement letter provides little in the way of support or analysis, courts have afforded such settlement offers little weight. Those letters can be written off as puffing and posturing.

Yet Gallion himself recognizes, "[w]hen a demand provides specific information to support a figure in the settlement demand, then the demand is entitled to more weight when determining whether it represents an accurate assessment of the plaintiff's claims." (Doc. 18 at 4) (citing *Golden Apple Mgmt. Co. v. Gene Computs., Inc.*, 990 F.Supp. 1364, 1368 (M.D. Ala. 1998)). Indeed, a "reasonable assessment" is likely when the plaintiff provides specific information regarding damages in a settlement demand. *Golden Apple*, 990 F.Supp. at 1268. Gallion's settlement letter sets forth his injuries in detail, the treatment

10

he has received so far, and, most importantly, the repercussions on his career. Contrary to Gallion's argument that "[t]here is absolutely no explanation for how the $450,000 was determined" in the letter, (doc. 18 at 5), the figures Gallion lists are specifically tied to his alleged losses from not being able to work at full speed. Moreover, Gallion's insistence that he is "still receiving medical treatment" implies the amount may be even more. (*See* doc. 7 at 5). Furthermore, nowhere in Gallion's motion to remand or supporting documents does he affirmatively represent to the Court that the amount in controversy does not exceed $75,000.

When, as here, a plaintiff's claim "is specific and in a pleading signed by a lawyer, [it] deserves deference and a presumption of truth." *Burns*, 31 F.3d at 1095. Indeed,

> [w]e will not assume – unless given reason to do so – that plaintiff's counsel has falsely represented, or simply does not appreciate, the value of [her] client's case. Instead, we will assume that plaintiff's counsel best knows the value of [her] client's case and that counsel is engaging in no deception. We will further presume that plaintiff's counsel understands that, because federal removal jurisdiction is in part determined by the amount of damages a plaintiff seeks, the counsel's choices and representations about damages have important legal consequences and, therefore, raise significant ethical implications for a court officer.

*Id.* Thus, the Court will take Gallion's counsel at her word and credit her assessment of her client's case as valued at $450,000, an amount of which more than exceeds the Court's jurisdictional requirement.

The preponderance of the evidence unambiguously establishes the amount in controversy is over $75,000.

11

## 2. CONCLUSION

Accordingly, for the reasons stated, and for good cause, it is

ORDERED that the Plaintiff's motion to remand, (doc. 7), is DENIED.

DONE this 5th day of March, 2021.

                                               /s/ Emily C. Marks
                                     EMILY C. MARKS
                                     CHIEF UNITED STATES DISTRICT JUDGE